Hamer v. City of Trinidad Good morning. Good afternoon and may it please the Court. I'm Garrett DeRouche and I represent Mr. Stephen Hamer. It's well established under the law that when a case is presented before a court and some of the claims are timely and some of the claims are untimely, the proper response by the district court is to proceed with the good claims and to leave the bad. Under the Americans with Disabilities Act, the statutes prohibit exclusion or denial on the basis of disability. Here, Mr. Stephen Hamer was excluded and denied access to the sidewalks and curb cuts in the City of Trinidad for a period of approximately two and a half years prior to filing suit. So to rule in your favor, we would have to determine that sidewalks, accessibility to I do not believe that that is an issue on appeal, Your Honor, because the district court alluded to the fact that it believed that they were sidewalks. It was briefed by both parties, but the district court decided to essentially decide this case on the narrowest possible grounds and it said there was legal precedent for that. So if that's an issue remaining, it is in fact an issue remaining if we agree with you and say that the case is not barred under the statute of limitations. The district court would still have to determine the question of service and availability to service. That's exactly right. It would go back and essentially the case would just restart and the district court would decide whether sidewalks are a service. And there are a number of other issues that still have to be decided in this case, various defenses that have been asserted by the defendant. So there's still a long way to go in this case. But ultimately, the American Disabilities Act prohibits exclusion or denial. And as I said, Mr. Hamer, he was excluded for a period of approximately two years and six months prior to filing suit. And unfortunately, the district court found that it said that instead of looking at the fact that he was excluded in those two years prior to filing suit, it said that there were, quote, original acts of discrimination. But the text of the statute is very clear that it prohibits exclusion or denial of access. And so that's really the main question here today is what is the unlawful act under the Americans with Disabilities Act and what is the prohibited conduct? Well, apart from that question, isn't there a preliminary question about whether the continuing violation doctrine applies? I don't necessarily. I think what's happened is that there's been some confusion with the word, the continuing violation doctrine, because what Mr. Hamer is saying is that each time he is excluded or denied access to the sidewalks, each time he can't use them, that's a separate violation of the act. And so the continuing violation doctrine expressed in Morgan is a little bit different because that's saying it's a difficult to discern pattern that you weren't aware of, such as a hostile work environment claim. Here, what Mr. Hamer is saying is that each time he's excluded or denied access, it's essentially an actionable claim. And he was excluded or denied access in the two years prior to filing suit. Therefore, he had timely claim. Let me just ask this hypothetically. Let's say that I have a disability and I am trying to access a sidewalk here in Denver today. I can't do it. And then tomorrow I do it. The next day I do it. I still can't access it. Does that mean that the statute of limitations would never expire because, well, every day I try to access the sidewalk and they've never fixed it? So that's one of the points the defendants have brought up, the saying that there would be no statute of limitations. That's not accurate. What we're saying is that if you think of it as a spectrum, and the two year and six months is a great example, because let's say Mr. Hamer was excluded every single day in that basis, right, he theoretically could assert a claim for damages for each day he was excluded, except he can't file a claim for damages for the instances of exclusion or denial in the first six months. So those first six months, those damages are out. So the answer is, yeah, I can sue. My damages are going to be limited to a two year period. Right. And only as to the instances of exclusion or denial caused in that two year period. And so that's one thing, that if he had damages that were caused by the earlier instances of exclusion or denial, those would still be out. So there's a case that the defendants brought up, the Rhodes case. That's an unpublished case. And in that case, the individual, he was excluded in 2006 through the spring of 2007. Right. And then he filed suit in August of 2009. But he had a surgery in 2008. And he said, well, it's a continuing violation. I've continued to be harmed. But he filed suit two years and four months after the last instance of exclusion or denial. So the fact that he felt damages, felt injuries later didn't matter because he was, the last instance of exclusion or denial was more than two years old. And that's exactly what we're saying here, is that it's an ongoing violation of law. And each time that Mr. Hamer encounters the barriers or is discriminated against, he has a new claim. But he can only sue for those instances of exclusion or denial that occurred in the last two years. And we see support for this from the Evans case. That's the United, ironically, United Airlines versus Evans. And in that case, the court said, Supreme Court said, you must look at whether there's a present violation. Let's say you're right illegally. What evidence did you present that Mr. Hamer tried to access one of these sidewalks on or after October 12, 2014? Mr. Hamer testified in his deposition that he experienced denial of access approximately every day. He's in, and that was his sworn deposition testimony. We also put forward the expert report that documented approximately 67% The expert report, that's what I wanted to ask you about. The expert report said that there were 88 violations, maybe new construction. But the district court pointed out that there was no evidence presented that Mr. Hamer had accompanied the expert. He may or may not have tried to access those curbs that the expert characterized as 88 violations. Sure. And what I'm saying is that they work in tandem. So first, Mr. Hamer testified under oath that he experienced exclusion or denial approximately every day in the city of Trinidad. He has no car. He has no way to get around except by going and using the sidewalks. And then we have a separate independent report saying approximately 67% of the sidewalks in the city of Trinidad are inaccessible. And so when you take them together, you see that this claim, this statement under oath by Mr. Hamer that he's being excluded every day, it's plausible. You know, it's enough to get past summary judgment. And that's what we're saying is that each day, essentially, he's being excluded because if he goes, he can't use the sidewalk. He has to go in the street. Or, you know, he's at risk of falling out of his mobility scooter because, you know, there are large potholes. There's huge, huge bricks in the way. Those sort of things. And so there is evidence that he has suffered exclusion in the two years. And how did the district court look at this? And how was the district court in error? Well, what the district court believed was that there were original acts of discrimination and that any subsequent encounters by Mr. Hamer were just the ill effects of the original acts of discrimination. So the very first time he encounters a barrier and can't do what he wants to do, that triggers the two-year statute of limitations? Correct. And that he has to file suit immediately. And if he ever encounters that barrier for the rest of his life, he's forever, you know, if he doesn't file suit in two years, he's forever excluded. That contradicts with the idea that the Americans with Disabilities Act is an affirmative obligation to accommodate. And I brought that up in my brief, and it's very important to note because the idea is that the ADA, it's not a building code. It's not saying you do this and you walk away. It's saying each day, you as a public entity, you have to accommodate your citizens with disabilities. And if at any point you fail, then you can be sued. You can be sued. And ideally, you know, you're not going to be doing that. That will never be occurring. But if you can, then you can be sued. Now, if you wait more than two years in Colorado, you can't sue over that specific instance of exclusion or denial. But if it happens multiple times, if it happens once a year, once a week, once a month, each time you're excluded or denied, you can sue for that instance. Let me ask you a hypothetical question. Let's put us in the sphere of environmental cases. And I'm an industrial pollutant. And the issue under the Clean Air Act is whether or not I need a permit to operate my facility. And let's say I need to get a permit before I emit pollutants and don't. Okay? I don't get it and I start emitting pollutants today. I do it tomorrow. I do it the next day. I keep doing it every day because I never get a permit. Does the statute of limitations ever expire on that? That is a great question. And I believe that's exactly the difference between an affirmative obligation versus something that is a building code or something of that effect. Because there, the obligation is to install the filter, for example. Or to get a permit. Or to get the permit. And if you... Let's just say that the violation of the Clean Air Act would be the failure to get a permit. Correct. So if it's a failure to get the permit, then the statute of limitations starts to exclusion or denial of access. So if the Clean Air Act had been written in such a way that said the prohibited act is actually the discharge of the, say, the oil or the gaseous material, that would be different. And you could be sued until you stopped, say, excluding. But there, the prohibited act is not having the permit. Here, the prohibited act is literally the exclusion of Mr. Hamer or the exclusion of the individual with a disability. And each time you're excluded, then you could sue. And I guess, and I don't mean to belabor this, but I want to make sure that I understand your answer. In both cases, whether you look at it as a sort of affirmative obligation or misconduct through inaction, in both cases, there's something that needs to be done to either fix the curb to correct the accessibility of the curb cut or to get a permit. But in both cases, there's something that's not being done. And so I'm not sure I fully understand why there would be a different answer for those two scenarios. The different answer is that you have a one-time obligation to get a permit. And if you don't have that permit, then the statute of limitations starts to run. So it's a one-time thing. Versus the ADA, it's a continuous every day you have an obligation to accommodate. So it's not a one-time obligation, it's a continuous obligation. Versus the permit request is you have an obligation to say, say they do it today, that's the one time. And so if you're an environmental group, you've got to catch them within two years or three years or whatever it may be. Versus the ADA, which is continuously you have to accommodate. And so that kind of leads also to a major point, which is when you refer to injunctive relief. I think we can draw a lot of parallels from injunctive relief. When can you sue for injunctive relief? It's when you're saying someone has done a wrong against me, right? And so here, Mr. Hamer is saying that the city of Trinidad is literally doing a wrong against him by excluding him, denying him access, and not allowing him to use the sidewalks. And so we can draw parallels from the fact that he has to show that he's been excluded or denied access. And he testified that he was excluded and denied access in the two years prior to filing suit. And that's the point that the Seventh and the Ninth Circuit were making in the Pickering and the Share case. But they were dealing with Title III. And Title III is very different language. Title III says that you can have an injunction for any person who is being subjected to discrimination on the basis of disability. It's in the present tense. It's an ongoing violation, much like what took place in Morgan with hostile workplace conduct. So I see a significant difference, and you can tell me if I'm wrong, between Title II and Title III. Sure. There certainly is a difference in the wording of the statutes. But I think that both Title II and Title III get to the same point, which is saying that you can't exclude or deny someone access to, in the case of, you know, Title III, it's places of public accommodation. For Title II, it's programs, services, and activities. But it's ultimately the same idea that you can't exclude individuals based on their disability and that this is a continuous obligation. It's not a one-time thing and you walk away and you're done. It's you have a continuous obligation. I'd like to reserve the remainder of my time. Thank you. Thank you. Good morning. May it please the Court. My name is Marnie Nathan Closter, and along with my colleague, Nicholas Poppe, it is our pleasure to represent the City of Trinidad in this matter. The issue in this appeal can easily be distilled down to the following. Mr. Hamer had clear knowledge of what he contended was a violation of the ADA, and yet he failed to timely file his lawsuit. And in an attempt to eliminate the consequences... Well, isn't each access that he attempts, isn't that a violation of the ADA? That's his theory. What do we do with that argument? Well, I think there's two components. One has to do with the substance, right, of whether sidewalks or service, which, as my colleague mentioned, was not decided by the district court because the court decided the more limited issue of statute of limitations, but even if it were a service, which our contention is it's not, then under statute of limitations, when you have knowledge of that violation, your statute begins to run. And the evidence was undisputed that Mr. Hamer had knowledge in April of 2014. He went before the City Council on numerous occasions, and he filed a complaint with the Department of Justice. And in that complaint, he specifically described the curb cut and sidewalk issues which formed the basis of this lawsuit, thereby saying he had knowledge of his allegation. He was being denied meaningful access. Is every access issue a separate cause of action? I don't know that we have a definitive precedent on that, but what we do have here is the fact that there is no specific violation or event that occurred within the two years prior to suit being filed in October 2016. The evidence at summary judgment was undisputed about that, and the district court specifically acknowledged that in its order, that even if this court chose to decline to issue a decision on the greater question of can you apply a continuing violation theory to a Title II claim under the ADA, you don't even have to get that far in this case because there is no specific sidewalk. There is no specific access point that Mr. Hamer pointed to at any point in the two years prior to filing suit. All of his examples occurred prior to his complaint to the Department of Justice, which was outside the statute of limitations. In his deposition, I thought counsel told us that he was continuing to have difficulty to access sidewalks in Trinidad. During his deposition, he was asked on various occasions to identify the specific incidences or events, and all he could say is, I'm denied access. I'm denied access everywhere. He couldn't point to a sidewalk. He couldn't point to a curb. Did he say when he was denied access? Could not point to, you know, two weeks before the deposition on that Thursday, I tried to access location B and could not get through there. Did he say, I'm continuously denied access because I can't move around the city? Something general like that? During the course of his deposition, he had a fairly general mantra of, I'm being denied meaningful access. I'm being denied meaningful access. Now, what was the specific denial, the date it occurred on, and where it occurred, which is what's required for there to be an actual event, right, for purposes of standing and injury, is not something that he could ever point to despite the opportunity to do so in his complaint, in written discovery requests, in deposition, in summary judgment, and on appeal. There's nowhere will you find a specific date and event within the two-year statute of limitations that he points to. Are those things you referenced all in the record? Yes. Okay. They were discussed in summary judgment. So what if he would have gone within the two-year statute of limitation, what if he would have testified at his deposition that within the limitations period that he was down by the McDonald's on March 13th of some date within the limitations period, and he tried, he needed to get up on the sidewalk, and he couldn't because there was no curb cut. Would that have been sufficient? It might have been. And I say might because the way this case starts is Mr. Hamer, who indicates that he is there to vindicate the rights of people with disabilities, starts complaining to the city council about issues he contends constitutes a violation of the ADA as soon as he moves to Trinidad in April of 2014. And during that process in the end of April, he goes to the Department of Justice and says, we are being denied meaningful access in a wide variety of circumstances, and he itemizes everything that he contends has happened. And he told the city council, I believe there are 79 violations back in April. Did he, he was able to specify those different places where he thought there were violations? Not specifically. He simply said, I think it was, there were 79 curb cuts or sidewalks that he contended in all of the city of Trinidad he had been through already in his short tenure that were in violation. So in this case, he had knowledge. By his own admission, he had knowledge in April. And I think that it would be hard-pressed to find a circumstance under your hypothetical where he's now contending some point later, well, I didn't know about that, based upon his previous statement. Okay, so that, let me change it up a little bit. So say outside of the two-year limitations period, he had tried to get up on the sidewalk by McDonald's and didn't do anything about it. And then two years later, he went and tried it again, and he still couldn't get up on the sidewalk. Does he have a claim then, or is it too late because the first time he tried it, he couldn't get up and he should have complained then? I think under a number of the cases, it would be too late, because whether he shouted from the rooftops, I've been denied access and I couldn't get up, he still had specific knowledge that he could not use that corner. And the fact that he chose not to do something about it is his choice. But statute of limitations exists for a very important reason. Otherwise, as Your Honor mentioned, we could be facing lawsuits every day from a different plaintiff or the same plaintiff. Well, but you also, you have also the ADA, and it's there for a reason, too. And that requires the city to provide access, and that is a continuing duty. And the city is providing access. Mr. Hamer, as is in the record, specifically admitted that he has access to all city buildings, that he's had access to all city parks, that there has not been a location that the city has control of that he cannot get to. It may not be in the most efficient route that he would like, but he can still get to those locations. And the city, as set forth in the record, is already spending more than a million dollars working on remediations. But Trinidad is a hundred-plus-year-old city, and money can only go so far and is only available in so many circumstances. And in working in consultation with the Department of Justice, they have come up with a list, and they are making slow and steady progress through that list. But if a statute of limitations does not apply, then, as an example, the city and county of Denver could be sued ten years later. Maybe, but let me ask you, let me ask it this way. And let's take everything you've just said for the last eight minutes or so that they knew in April when he stood up at the council meeting and complained about these things. And let's assume that Trinidad is spending millions of dollars to remediate these curves. And let's assume everything else. Let me just take myself. Somebody, your co-council, beats me up today. I've got a cause of action for battery or assault. And he beats me up tomorrow. I've got a cause of action for the same thing. And these are discrete wrongs, discrete torts that I can sue for every single day because they're new torts. And your adversary is essentially arguing, I think, more elegantly than I put it, that there is, in effect, every time he tries to access a curb, a separate equivalent of me being beaten up. It's a separate wrong. And why isn't it? Even if he could have sued in April and even if he knew about it and was being dilatory and even if Trinidad is doing everything in their power to remediate this, why isn't it a separate wrong every time he tries to access a curb? Well, I think there's a couple components to that. First, in this case, we don't have your example where he has a specific incident of being beat up within the two years. And I meant to assume, and I'm sorry to interrupt, but I meant to assume for the sake of argument that we can read into the record that there is sufficient evidence for a prior effect to find that he tried to access one of these curbs on or after October 12th. I just wanted to include that. Second of all, under the ADA, the question is meaningful access. And so would this one specific incident constitute meaningful access and a denial of it? Certain sidewalks maybe. Others might require multiple areas where they can't access in order for it to be there. But even beyond that, under your theory, if every day is a new wrong, then there isn't a statute of limitation. In which case, the Morgan case, which specifically by the Supreme Court, indicated that we are going to continue to have statute of limitations and that there is this very subset of cases where we shouldn't. And we should be able to have an expansion of that. But even in the Morgan case, there was a specific event that could be pointed to within the statute of limitations time period. But the failure to promote in Morgan wasn't something that could be repeated over and over again, unless the idea was that the employer could have sui sponte. I mean, if I apply for a promotion and I'm denied, that's an event that is not going to be repeated tomorrow. It's a discreet event that is not by nature repetitive. And that's the only event that was isolated as not within the continuing violation doctrine in Morgan. But I think this is no different than that. Because under Morgan, the failure to promote, you don't get promoted. That is a discreet act. But you still have harm from it well beyond the statute of limitations. It could be five years later and someone's lack of promotion puts them at a lower level and therefore not available for other training opportunities, promotions, and salary increases. It's no different than here. We have the events. We have the events in April of 2014. It's the impact or the injury that he's claiming continues. And that's no different than in the Morgan case where the court said the continuing violation doctrine does not apply. It should only be applied when you have to have a series of events in order that when you look at them in combination, show that there is this hostile work environment pattern. So with Morgan as the example, you need to show pervasive. And one small comment or look may not be pervasive. But ten in combination may then on the tenth one put notice that there's a violation. Here we have notice on the first one according to Mr. Hamer, and it's outside the statute of limitations. In this case, does it really, you know, does the continuing violation doctrine really matter in light of your contention that he never specifically identified a single time he couldn't or location where he couldn't go up a curb cut? I would agree, Your Honor. I don't even think you need to get to the continuing violation. It's undisputed there's a two-year statute of limitations. It's undisputed that Mr. Hamer contends that the incident occurs in April of 2014 but doesn't file suit until the end of October 2016. That's two and a half years. He's six months too late. So we have to look at his deposition, it sounds like, to see what he did assert. That is, his denial of access and when it occurred. And the court's summary judgment order, because she talked about that specifically and even referenced discussing during oral argument. She discusses in her order about talking to Mr. DeRuse about if I don't apply the continuing violation theory, tell me an event within the two years prior to filing suit. What is covered under that? And there is no identification of on January 2015 he accessed the corner of 1st and Main. Well, is that necessary? I mean, isn't it enough to say I'm handicapped, I can't get to the grocery store, I haven't been able to get to the grocery store since I moved here 20 years ago, and I still can't get to the grocery store? Do I need to say on Tuesday at 4 a.m. I went to the curb at the corner of 14th and 10th Street and I couldn't access? They don't need to say that, do they? I think they need to prove an actual specific violation that they came across and suffered in the time frame of the statute of limitations. And, you know, statute of limitations exists for a reason so that... Do we have any case that it seems that we should have any case that tells us how we should view statutes of limitations in ADA cases? I think there's a couple of cases that are helpful. I think the foster court said it nicely when it said the continuing violations doctrine is an equitable exception to a strict application of a statute of limitation where the conduct complained of consists of a pattern that has only become cognizable as illegal over time. Is that an ADA case? Yes. And also the VFI case that we cited to in our briefing discussed if prior events should have alerted a reasonable person to act, continuing violation theory will not overcome a relevant statute of limitations. I think those two courts said it probably better than I can in that regard about why it's once you have notice. And in here that was in April and suit was not timely filed. Okay. Thank you, Your Honor. We request you affirm the district court decision. Thank you. May it please the Court. One issue I think has been confused in the kind of the discussion that just occurred because what the district court was asking me on oral arguments before was not what instances has he not been able to access a curb cut in the two years. It was what instances has he been exposed to a new violation in the two years. What new instances? And we couldn't point to. In other words, new construction. New construction or places that he's not been to before. And my point was that he pointed out in various testimony that he's been exposed to all of them many times before and he was exposed to them many times before during the two years. And the argument that counsel just brought up that we didn't point out specific instances, we went beyond that. And I would point the Court to JA576768. You know, Mr. Hamer provided various examples of times of curb cuts that he's had difficulty with. You know, he didn't provide an itemized list of, you know, this day I didn't go to the McDonald's in the two years. But he did provide testimony under oath that he was excluded numerous times in the two years. He provided examples of curb cuts that he was excluded from. And that should be enough to allow. So if we look at the record, according to you, we're going to see some specifics as to when violations might have occurred. Well, I don't know about specifics of when, but what I'm saying, those pages have instances of where. Okay. And he testified, as I said, I point out in my memorandum, that he was exposed to these every day for the last two and a half years. I mean, under the Twombly-Iqbal standards, I mean, don't you have some duty to plead with enough specificity where the other side can respond to those? I do believe that Mr. Hamer has put forward sufficient facts of saying, you know, here are the various curb cuts that he's been encountering. There was various briefing on that. But that really wasn't the reason that this case was dismissed. Because he couldn't point to any specific new violations within the two years. You know, I understand that. I'm just concerned that a generalized complaint might not be sufficient. And it sounds like maybe we're dealing with a complaint that's generalized about the city as a whole and not one that's directed at specific instances of trying to make it, you know, access something. But you say the record's different. So I'm going to take a look. Thank you very much. Thank you. Thank you both for your arguments this morning. The case is submitted. Court is in recess.